ARCHIBALD S. LAMBERT, PROSECUTOR, v. CITY OF AT-
LANTIC CITY ET AL., RESPONDENTS.

Argued February 17, 1915—Decided March 6, 1916.

By the grant dated February 13th, 1907, of the riparian commission to Atlantic City, pursuant to chapter 202 of the laws of 1903 (*Pamph. L., p.* 387; *Comp. Stat., p.* 4397), the lands granted were reserved for park purposes under the express requirement of the statute and the terms of the grant, and such reservation was superior to and exclusive of any easement of highway claimed to exist by reason of such lands or part thereof lying within the produced lines of a public street. *Hoboken* v. *Pennsylvania Railroad Co.,* 124 *U. S.* 656, followed.

On *certiorari.*

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Bourgeois & Coulomb.*

For Atlantic City, *Theodore W. Schimpf* and *Lewis Starr.*

For the respondent Ida S. Vare, *Babcock & Champion.*

The opinion of the court was delivered by

PARKER, J. The writ brings up a resolution of the Board of Commissioners of Atlantic City, adopted on September 10th, 1914, which reads as follows:

"*Be it resolved,* That the director of streets and public improvements be and he is hereby authorized to compel the removal of or to remove all piling and other obstructions from the ocean end of Berkeley square, and be it further resolved that the director of public safety be and he is hereby authorized and directed to render such aid to the director of streets as may be necessary to this end."

Berkeley square is a short street, fifty feet wide, in the western residential section of Atlantic City. It begins at the south side of Atlantic avenue (which at this point is the nearest highway paralleling the ocean front) and runs southerly at right angles toward the ocean. How far it extends legally as a street is one of the questions in dispute. Physically, it is an open street with roadway for two hundred and sixty-nine feet south from Atlantic avenue, where the roadway becomes a grass plot some twenty-five or thirty feet square, the sidewalks continuing alongside of the plot, and at three hundred and seven feet the whole terminated, at the time of the resolution, in a concrete bulkhead with an ornamental flight of steps leading downward some three or four feet to the natural surface of the beach sand, which slopes gradually to the ocean. On the map submitted in evidence the high-water line is placed about thirty feet south of the steps, and the boardwalk about one hundred feet further, connected by a planked walk supported on piling with the easterly sidewalk of Berkeley square. Both sides of Berkeley

square, as far as the steps, are built up with residences of a high class.

On May 11th, 1914, the riparian commission made a lease to Jesse R. Turner of a tract lying between but not bounded by the concrete bulkhead and the boardwalk, and running from the extended east line of Berkeley square easterly to the extended west line of Kensington avenue, a distance of one hundred and sixty-five feet. The tract is one hundred and thirteen and three-tenths feet wide, and its north line is some six or seven feet south of the bulkhead, and its south line a few feet north of the boardwalk and coincident with the line of the "public park" tract granted to Atlantic City as hereinafter stated. The legal effect of this instrument will be considered later on. The resolution in question was due to the fact that Lambert, the prosecutor, acting apparently in right of Turner, undertook to bulkhead and fill in not only the tract embraced within the lines of his description but land to the west of it as far as the extended centre line of Berkeley square, with the avowed purpose of making a roadway thereon to give access to the tract described in the riparian lease. The resolution was passed at the instance of property owners on Berkeley square.

The prosecutor's main attack on said resolution is based on two propositions—*first,* that the land he has undertaken to fill in within the extended lines of Berkeley square is part of a public street; and *secondly,* that by reason of that fact and his ownership or control of abutting land, he is owner to the centre and entitled to fill it up to his own grade to obtain access with wagons, &c., to his premises, or if he does not own the fee therein to the centre, is nevertheless entitled as abutting owner to obtain such access in this way. It may be assumed that application was made to the city authorities to grade up to the higher level and that they refused to do so.

What the prosecutor asserts is, therefore, on his own showing, the individual right of an abutting owner to change the existing grade of a street to meet his individual convenience. We do not concede such right in any respect, but find it unnecessary to deal with or decide the point, as we reach a

result adverse to the prosecutor on another ground, viz., the *status* of the disputed territory as a street.

There seems to be no proof whatever of the dedication or laying out or municipal acceptance of Berkeley square as a street south of the concrete bulkhead already mentioned. The paving ordinance of October 10th, 1906, is not printed, and apparently was not introduced into evidence, though its purport was stipulated; and it appears to be undisputed that at that time the high-water line, beyond which the paving naturally would not run, was about two hundred and seventy-five feet from Atlantic avenue. Prosecutor relies on the doctrine of *Hoboken Land and Improvement Co.* v. *Hoboken*, 36 *N. J. L.* 540, that when a street is dedicated to an existing high-water line, the dedication will extend to a new high-water line created by filling out, &c. But it is not clear that this claim can be proved by an individual in the absence of an acceptance of dedication by the public. In the *Hoboken Case, supra,* as in the recent case of *Camden.* v. *McAndrews & Forbes Co.,* 85 *N. J. L.* 260, the municipality, representing the public, sued in ejectment, and the bringing of the suit was held to constitute an acceptance. In the case at bar the municipality takes a position quite inconsistent with acceptance for a street, even assuming the "extended" dedication.

But there is a still more fundamental objection to prosecutor's claim. Pursuant to the act of 1903 (*Pamph. L., p.* 387), permitting certain cities that have laid out a public park along tidewater, and having streets extending to tidewaters, to apply for and obtain from the riparian commission a grant of lands under water within the limits of such park, and the land in front of such streets or highways (*Comp. Stat., p.* 4397), Atlantic City obtained a grant in 1906 of a park tract consisting of many parcels. Parcel 18 is a tract bounded east by the "extended" line of Kingston (then called Milledgeville) avenue, west by the "extended" line of Berkeley square, and north by what is the south or outer line of the Turner tract above mentioned. In 1907, by another grant under the same statute, the commission granted to At-

lantic City, *inter alia,* the tract bounded north by high-water line, east and west by the extended lines of Berkeley square, and running some one thousand five hundred and seventy-two feet to the exterior commissioners' line. This includes the *locus in quo;* and therefore, Turner, whose lease came seven years later, could acquire no right to the fee as an abutting owner even if his riparian lease be regarded as a deed. Furthermore, in conformity with the statute, the grant to Atlantic City expressly provided "that the land under water hereinbefore described is granted and conveyed for *park uses and purposes and none other* and shall be kept and maintained as an open public park or place for public resort and recreation, and that no building or other structures shall be erected on such park or on the lands under water hereby granted and conveyed inconsistent with its use as a public park or place for public resort and recreation; provided, however, that public walks and drives may be constructed along and upon any portion of the said lands under water. And also provided, that if at any time hereafter such public park or the land under water hereby granted shall cease to be used as such park or place for public resort and recreation, then and in that event this grant, and all the right, title and interest in said lands under water hereby granted, shall cease and determine and the lands under water hereinbefore described shall forthwith thereupon revert to the state."

It is, of course, entirely optional with the city as grantee, whether public walks and drives shall be constructed on this property. If it does not exercise that option, prosecutor has no legal ground of complaint. He certainly has no right to make a walk or drive himself without the city's leave. The doctrine of access to a highway is not applicable in such a case, for the simple reason that there is no highway. The intent of the state, as expressed in the statute and grants, being to reserve the land for park purposes without reference to street ends, the rule of dedication of a street to a new high-water line is inapplicable. *Hoboken* v. *Pennsylvania Railroad,* 124 *U. S.* 656. The claim that dedication arose out of the language of the grants by mention of street lines is without sub-

stance, as they are called "extended" lines throughout, and the effect of that word is settled for us by the Court of Errors and Appeals in *McAndrews & Forbes Co.* v. *Camden National Bank,* 87 *N. J. L.* 231, 238; see, also, *M. & E. R. R.* v. *Jersey City,* 63 *N. J. Eq.* 45, 64. The prosecutor, therefore, by constructing the bulkhead in question within the extended lines of Berkeley square, was a mere trespasser upon the park property, and as such not entitled to a hearing preliminary to the resolution. It may be doubted whether a resolution was necessary, as it would be plainly within the scope of authority of the official or department having charge of the park to prevent and remove unlawful obstructions to its proper use.

We consider that the prosecutor has not shown any illegality injurious to himself in the resolution brought up, and the writ will therefore be dismissed, with costs.